IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| ALTON VICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 99-JEO-3022-J |
| | ) |
| AUTOZONERS, INC., | ) |
| | ) |
| Defendant. | ) |

FILED
01 APR 30 PM 2:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 30 [2001]

### MEMORANDUM OPINION

Plaintiff Alton Vick (hereinafter "Vick" or "the plaintiff") has filed this action, alleging claims of invasion of privacy, outrage, and defamation against his former employer, defendant AutoZoners, Inc. (hereinafter "the defendant," "AutoZoners," or "Autozone"), which owns and runs AutoZone stores in Alabama and in other states. Presently before the court is the defendant's motion for summary judgment. (Doc. 13). Upon consideration of the matter, the court finds that the motion is due to be granted.

### I. BACKGROUND

The plaintiff was working for the defendant as a store manager at its Gardendale location when he was transferred to a Jasper store in January 1996. The transfer was intended as a promotion. The plaintiff was given a pay raise premised on his performance at the Gardendale store. The defendant anticipated that the plaintiff would be a "good fit" for the Jasper store. Previously, two employees at the Jasper store were terminated due to theft problems and the store "should have been free of problems at th[e] point" that the plaintiff was transferred there. (Doc. 15, Ex. 1 (Sherrer Deposition ("Sherrer"), p. 54)). At the time of the transfer, the Jasper store was the highest sales-producing store in the state. (Sherrer, p. 55).

23

In the first quarter of 1997, the plaintiff approached District Manager Bruce Sherrer about the work performance of Carla Lanthrip,[1] a female employee at the Jasper store. (Sherrer, p. 14). They discussed problems with her attendance and cash register shortages. (*Id.*). Lanthrip was told that if her performance did not improve, she could lose her job. (*Id.*, pp. 14-15). The plaintiff later talked with Sherrer about terminating Lanthrip's employment. (*Id.*, p. 15).

After the plaintiff's conversations with Sherrer about Lanthrip in early 1997, there was a meeting at the Jasper store with employees regarding sexual harassment. (*Id.*, pp. 15-16). Sherrer stated that this was part of the company's requirement that such classes were to be taught in every store. (*Id.*, p. 16).

In about March 1997, Lanthrip accused the plaintiff of sexual harassment.[2] (Sherrer, p. 10). Lanthrip complained to another employee, Pam Posey (Polk), who reported the complaint to Sharon Cummings, the Assistant Manager at the Jasper store. (*Id.*, pp. 10-11). Cummings reported it to the plaintiff. He, in turn, informed Sherrer of the allegations. (*Id.*). Sherrer informed the company's loss prevention officer and his district manager. An investigation was started. The plaintiff was placed on a five-day paid suspension. (Doc. 13, Ex. 8, Vick Deposition ("Vick"), pp. 258-59). Various interviews were conducted of employees, including the plaintiff. (Sherrer, pp. 12-13). As a result of the investigation, the plaintiff was found to have made some unprofessional comments and he was "talked to" and "counseled." (*Id.*, pp. 13, 17, 52-54; Doc. 13, Ex. 4). Because Cummings reported the complaint to the plaintiff, which

---

[1] Lanthrip also is referenced in the record as Lantrop. For consistency, the court will refer to her as Lanthrip.

[2] Sherrer's deposition dates this around April 3, 1997. (*Id.*). However, interviews conducted as a result of Lanthrip's complaint occurred during the last part of March 1997. (Doc. 13, Ex. 3). This discrepancy is not material.

was contrary to company policy, she was demoted to a sales person.

After this investigation, there was a second one premised on harassment complaints from another employee, Judy McGough.[3] Although she was no longer with the defendant at the time of the complaint, the claims were investigated because she asserted that she left the company because of the plaintiff's harassment of her. (Sherrer, p. 17). After the investigation, including another interview of the plaintiff, he was not disciplined or counseled as a consequence of the McGough allegations. (*Id.*, p. 17). During the investigation, it was determined that Cummings had told McGough about Lanthrip's allegations and provided her with Lanthrip's telephone number to contact her. (*Id.*, p. 19). Cummings was terminated for providing this information to McGough. (*Id.*, pp. 19-20).[4]

After both investigations, there was a company meeting in Nashville, Tennessee for the company's store managers. It was considered "a big pep rally" for the managers, rewarding them for their work. (Sherrer, pp. 20-21). It was attended by about three thousand persons. (*Id.*, p. 21). When the plaintiff arrived for the meeting, he learned that his hotel room had been canceled. (Doc. 16, Ex. 2). He also did not receive his AutoZone bag or name tag. (*Id.*). This caused him and his wife embarrassment. (*Id.*). He ultimately got everything he was entitled to receive in connection with the meeting, including a hotel room. (Doc. 17, Ex. 1, pp. 123-24).

In September 1997, the plaintiff was accused of drug activities in a drug investigation of

---

[3] The plaintiff refers to McGough as McGuff. (*See* Doc. 16, Ex. 2, p. 1). For consistency, the court will refer to her as McGough.

[4] The plaintiff asserts that he unfairly was investigated twice for the Lanthrip allegations. (Doc. 16, p. 3 & Ex. 2). This conclusion in the plaintiff's brief, which is reiterated in his letter to the company, ignores the fact that the record clearly demonstrates that the second investigation was premised on McGough's allegations. (Sherrer, p. 17). The plaintiff's April 30, 1997, interview statement shows that the inquiry concerned questions regarding both McGough and Lanthrip. (Doc. 15, Ex. 5).

another employee. The employee, Billy Alexander, was arrested and asserted that the plaintiff was falsifying store gift certificates to purchase drugs. (Sherrer, p. 22; Vick, p. 134). He also claimed that the plaintiff was using cocaine and that he was "getting him [(Alexander)] women." (Sherrer, pp. 22-23). An investigation into the allegations again revealed no wrongdoing by the plaintiff. (*Id.*, pp. 23, 27, 46). Alexander was terminated. (*Id.*, p. 23).

In or about September 1997, an individual named Michael Bolton came to Sherrer and told him that Alexander had "bought a gun or put a hit out" on the plaintiff. (Sherrer, p. 29). Sherrer told Bolton to go to the police. He also told Bolton to tell the plaintiff. (*Id.*). About this time, the plaintiff also informed Sherrer that Alexander's wife had called his wife and told her "a bunch of stuff and got his wife real upset and made some allegations about [the plaintiff]." (*Id.*, p. 41). The plaintiff also told Sherrer that he wanted a transfer. (*Id.*, pp. 39, 41). Sherrer went to the then District Manager, Thad James, who informed him that the plaintiff had written a letter to the company stating that he felt he was being treated unfairly and that he was being threatened. (*Id.*, pp. 39-40).

On January 7, 1998, Cummins and Lanthrip filed a civil complaint against the defendant in this court, alleging sexual harassment and retaliation. (Doc. 13, Ex. 6). Lanthrip also alleged state law claims of invasion of privacy, battery and negligent retention. On March 19, 1998, another AutoZoners employee at the Jasper store, Mary Fisk, filed an action against the defendant, alleging sexual harassment and retaliation. (Doc. 13, Ex. 7). She also alleged state law claims of invasion of privacy and negligent or wanton supervision and retention. The lawsuits were resolved after the defendant made monetary settlement offers. (Vick, p. 53).

The plaintiff's transfer did not come until about a year later despite his repeated requests.

(Sherrer, pp. 50-51). The plaintiff stated that he was told that AutoZoners could not transfer him because of the pending lawsuits. (Vick, p. 126). According to him, "They wanted me in the area." (Vick, p. 126). He was ultimately transferred to another store in Pelham, Alabama as a manager. (Vick, pp. 54, 87). He later resigned from the company. (*Id.*, p. 164).

## II. SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Initially, the moving party bears the burden of proof "to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party can satisfy his burden by presenting evidence that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-323; *see* FED. R. CIV. P. 56(a) and (b).

Should the moving party meet his burden of proof, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608. Material facts are those that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Genuine material facts are those material facts that could cause a

reasonable jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. The nonmoving party need not present evidence in a form necessary for admission at trial, however, the movant may not merely rest on the pleadings. *Celotex*, 477 U.S. at 324.

The court should consider the pleadings, depositions, and affidavits in the case before reaching its decision, and all reasonable inferences should be made in favor of the nonmovant. *Griesel v. Hamlin,* 963 F.2d 338, 341 (11th Cir. 1992). The judge's role is "not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

#### A. Invasion of Privacy

The plaintiff's first claim is that the defendant "invaded [his] privacy and wrongfully intruded into [his] private activities by subjecting him to inquiries and investigations which had no merit or truth and which the defendant knew or should have known [were] false." (Doc. 1, ¶ 2). The defendant asserts that this claim is without merit and that the investigations were necessary because of the allegations of misconduct. AutoZoners also asserts that the plaintiff voluntarily consented to questioning concerning the investigations.

The Alabama Supreme Court has recently stated:

> In *Johnson v. Corporate Special Services, Inc.*, 602 So. 2d 385 (Ala. 1992), this Court addressed the law applicable to invasion-of-privacy claims:
>
>> This Court recognizes that the wrongful intrusion into one's private activities constitutes a tort known as the invasion of privacy. *Alabama Electric Co-operative, Inc. v. Partridge*, 284 Ala. 442, 445, 225 So. 2d 848, 851 (1969). This Court in *Norris v. Moskin Stores, Inc.*, 272 Ala. 174, 132 So. 2d 321 (1961), following W. Prosser, Law of Torts, pp. 637-39 (2d ed. 1955), set

6

out the "four distinct wrongs" of the tort of invasion of privacy:

> "1) the intrusion upon the plaintiff's physical solitude or seclusion; 2) publicity which violates the ordinary decencies; 3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and 4) the appropriation of some element of the plaintiff's personality for a commercial use."

See *Hogin v. Cottingham*, 533 So. 2d 525, 528 (Ala. 1988).

The tort of invasion of privacy may occur both where there is a public and commercial use or publication and where there is a wrongful intrusion into one's private activities or solitude or seclusion. *Hogin*, 533 So. 2d at 530, citing Norris, 272 Ala. at 176, 132 So. 2d at 322-23. There are two standards the Court uses to find whether there has been a tort of invasion of privacy:

> "1) If there has not been public or commercial use or publication, then the proper standard is whether there has been an 'intrusion upon the plaintiff's physical solitude or seclusion,' or a 'wrongful intrusion into one's private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities'; and 2) if there has been public or commercial use or publication of private information, then the proper standard is whether there has been 'unwarranted publicity,' 'unwarranted appropriation or exploitation of one's personality,' publication of private affairs not within the legitimate concern of the public, an intrusion into one's 'physical solitude or seclusion,' the placing of one in a 'false but not necessarily defamatory position in the public eye,' or an 'appropriation of some element of [one's] personality for commercial use.'"

*Hogin*, 533 So. 2d at 530-31 (citations omitted). (Emphasis added.) *See also*, *Smith v. Doss*, 251 Ala. 250, 37 So. 2d 118 (1948).

602 So. 2d at 387.

*I.C.U. Investigations v. Jones*, ___ So. 2d ___, 2000 WL 869595, *2-3 (Ala 2000).

The plaintiff's complaint makes it clear that he is proceeding under the former theory recognized by the Alabama Supreme Court. Accordingly, this court must examine "the purpose

7

for the investigation and whether '[t]he thing into which there is intrusion or prying [is], and [is] entitled to be, private.'" *Jones*, 2000 WL 869595, at *3, *citing Hogin*, 533 So. 2d at 531 (quoting W. Prosser & W. Keeton, *The Law of Torts* 855 (5th ed. 1984)).

Numerous pertinent matters are not disputed by the parties: first, various employees advanced allegations of sexual harassment, drug use, and theft against the plaintiff while he was the manager at the Jasper store; second, the defendant conducted investigations into the allegations; third, the plaintiff was transferred to the Pelham store at his request; and fourth, he ultimately resigned. Premised on the evidence, the court finds that the investigations about which the plaintiff complains were initiated after employees made complaints of sexual harassment, drug use, and theft against the plaintiff. Nothing in the record evidences that the defendant believed, or had any objective reason to believe, that the allegations were without merit when the investigations were commenced. The plaintiff candidly admits during his deposition that the defendant had a duty to investigate the allegations. (Vick, pp. 87, 102, 134-35, 164-65, 168-69). The court, therefore, finds no improper motive for the investigations on the part of the defendant. To the contrary, when claims of sexual harassment are levied, a corporation is under an obligation to investigate and correct any complaint. *See Faragher v. City of Boaca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 633 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *Fredrick v. Sprint/United Management Company*, __ F.3d __, 2001 WL 336007 (11th Cir. April 4, 2001). A failure to investigate and correct a complaint would defeat any defense to the action by the corporate defendant.

Nothing in the record demonstrates that the manner or content of any of the investigations

was inappropriate. The defendant followed its policy of investigating "every complaint" of sexual harassment asserted by its employees. (Doc. 13, Ex. 1 (Preventing Sexual Harassment Fact Sheet)). The written statements in the record, which were provided by the plaintiff to the defendant during the investigatory stage, all state that they were made voluntarily. (Doc. 13, Ex. 3, 5). The questions asked were appropriate in view of the female employees' allegations of sexual harassment. Despite the plaintiff's claim in the complaint that the defendant knew or should have known that the allegations of wrong doing were false and the requirement that the court "must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor," the court cannot find any factual basis to support the plaintiff's conclusion. *Dent v. Federal Mogul Corp.*, 129 F. Supp. 2d 1311, 1313 (N.D. Ala. 2001). Additionally, the company had a duty and responsibility to its employees to investigate the allegations of drug activities by the plaintiff.

The court finds that the plaintiff has failed to make a sufficient showing of an "intrusion upon [his] physical solitude or seclusion" or a "wrongful intrusion into [his] private activities . . . so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Jones*, 2000 WL 869595, *3. The defendant was justified in making the inquiries premised on the complaints, and its conduct in conducting the investigations did not constitute an improper intrusion into the plaintiff's private activities. To the contrary, the investigations were properly focused upon his activities at work and upon his interaction with other employees under his supervision.

**B. Outrage**

The plaintiff next advances a claim of outrage. The defendant asserts that the plaintiff

has not and cannot state such a claim under the facts.

The Alabama Supreme Court recently stated as follows:

The tort of outrage was first recognized by this Court in *American Road Service Co. v. Inmon*, 394 So. 2d 361 (Ala. 1981). In that case Inmon, who had formerly been employed as a claims supervisor by American Road Service Company, sued his former employer, alleging that he had been mistreated during the events leading to his termination and that that mistreatment had constituted outrageous conduct; he argued that outrageous conduct should be recognized as a tort. In *Inmon*, this Court recognized such a tort. It discussed the requirements of the tort, emphasizing the extreme nature of the defendant's conduct that would be sufficient to constitute the tort, and the severity of the emotional distress that would entitle a person to recover for that tort:

> "The emotional distress [caused by the defendant's conduct] must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement [ (Second) of Torts], at 78. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. [Cmt. d], Restatement, supra at 72."

The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, *Whitt v. Hulsey*, 519 So. 2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133 (Ala. 1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322 (Ala. 1989). *See also* Michael L. Roberts and Gregory S. Cusimano, Alabama Tort Law, § 23.0 (2d ed. 1996). In order to recover, a plaintiff must demonstrate that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990) (citing *American Road Service Co. v. Inmon* ).

*Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000).

The plaintiff states that the totality of the circumstances are so "outrageous" and "beyond all possible bounds of decency" that he has sufficiently stated a claim to overcome the

10

defendant's motion for summary judgment. (Doc. 16, p. 12). The court disagrees with the plaintiff's assessment and finds that the motion for summary judgment is due to be granted on this claim. First, the plaintiff's allegations do not fit any of the enumerated instances that would support an outrage claim. Second, the evidence does not demonstrate that the defendant's conduct was intentional or reckless. Third, the defendant's actions were not "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," so to permit this court to allow the claim to proceed to trial. *Potts*, 771 So. 2d at 465.

> During his deposition, the plaintiff stated:
>
> A.   Somebody put these other people up to it [(the reports of misconduct)]. Why would they makes accusations against me when I haven't done nothing?
>
> Somebody, either AutoZone or Bruce Sherrer, somebody didn't want me in Jasper, and they made a decision to put these people up to it. That's all I can figure.
>
> Q.   But you don't have any evidence of that?
>
> A.   No.

(Vick, p. 259). The plaintiff's speculative allegations are not sufficient to overcome the defendant's motion for summary judgment. Similarly, the court finds that AutoZone's delay in arranging for the plaintiff's transfer does not provide a sufficient basis upon which to deny the defendant's motion for summary judgment as to this claim.

### C. Defamation

The plaintiff's last claim for relief is for defamation premised on the defendant's "publishing a false and defamatory statement of and concerning the plaintiff to wit: plaintiff's

11

Supervisor's [sic], Bruce Sherrer and Lawrence Swindell, informed other AutoZone employees of the allegations made against the plaintiff in an attempt to defame the plaintiff's name and reputation." (Doc. 1, Count III, ¶ 2). The defendant asserts that it is due summary judgment on the defamation claim because (1) the plaintiff can present no evidence that anyone with AutoZone made a false statement about him, (2) there is no evidence that AutoZone published any false statements, and (3) the defendant's investigation is within the qualified privilege defense. (Doc. 13, pp. 16-19).

> The Alabama Court of Civil Appeals recently stated:
>
> > The tort of defamation involves the protection of the "reputation and good name" of the plaintiff. Michael L. Roberts & Gregory S. Cusimano, Alabama Tort Law, § 24.0, 831 (1996).
> >
> > > "'The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence; and 4) either actionability of the statement irrespective of special harm [(per se)] or the existence of special harm caused by the publication of the statement [(per quod)].'"
> >
> > *Drill Parts & Service Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289 (Ala. 1993) (quoting *McCaig v. Talladega Publ'g Co.*, 544 So. 2d 875, 877 (Ala. 1989)) (emphasis added). "[W]hether the communication was privileged or not by reason of its character, or the occasion on which it was made, is a question of law to be decided by the court." *Walker v. Majors*, 496 So. 2d 726, 730 (Ala. 1986).

*Wright v. State*, 757 So. 2d 457, 460 (Ala. Civ. App. 2000).

**1. False and Defamatory Statement**

The defendant initially asserts that it did not make any statement, much less a false statement, regarding the plaintiff. (Doc. 13, p. 16). The record demonstrates that the company asked the plaintiff numerous questions premised on the investigations. However, the inquiries do

12

not constitute false statements concerning him. Accordingly, the court finds that the plaintiff has not satisfied the first element that the defendant must have made a false statement about the plaintiff.

To the extent that the plaintiff complains that Sharon Cummings told McGough that Lanthrip had made similar harassment allegations, this does not constitute an actionable false statement attributable to the defendant for a number of reasons. First, the statement was not false. Read in the light most favorable to the plaintiff, the record shows that Cummings simply told McGough about Lanthrip and that she gave McGough Lanthrip's telephone number. This is not sufficient to impose liability upon AutoZone. Second, as best can be determined from the record, the defendant demoted Cummings from Assistant Manager for reporting Lanthrip's allegations to the plaintiff. According to the plaintiff's letter to the District Manager on March 29, 1998:

> After the [first] investigation, My [sic] Assistant Manager, Sharon Cummings was demoted to a red shirt for not following AutoZone policy and procedure. Over the next week Sharon divulged confidential information to an ex female AutoZone (Judy McGuff). [sic] Who in turn contacted Carla Lantrip. Sharon was fired from AutoZone for another (severe) breech in AutoZone policy and procedure.

Doc. 15, Ex. 2, p. 1). This is not sufficient to support the plaintiff's defamation claim against the defendant.

### 2. Publication

The defendant next asserts that there is a lack of publication. AutoZone cites *K-Mart Corp. v. Pendergrass*, 494 So. 2d 600, 603 (Ala. 1986), for the proposition that "even though defamatory information may have found its way into the public spectrum, without specific

13

evidence of publication, a bare inference that a corporate employee communicated defamatory information outside of the corporation is insufficient to prove the communication element of a defamation action." (Doc. 15, pp. 16-17).

The record is devoid of evidence that AutoZone management made any false and defamatory statements, much less inappropriate statements outside the corporate context, necessary to conduct the investigations mandated by the various allegations. This is demonstrated once again by the plaintiff's testimony at his deposition that the accusations against him, as well as the rumors in the community, were premised on actions of AutoZoners' personnel. The relevant colloquy includes the following:

> Q. This was a confidential investigation, wasn't it?
>
> A. Right.
>
> Q. The folks that were interviewed and talked about it, they were all AutoZone employees; right?
>
> A. Right.
>
> Q. Nobody talked to anybody about Carla Lanthrip's accusations that wasn't an AutoZone employee; Right?
>
> A. Somebody did, because the whole damn town knew about it and gave my wife a hard time. My son, they didn't want him on the ball team because of the first investigation.
>
> Q. Do you think it was Carla Lanthrip or Sharon Cummins?
>
> A. Somebody in AutoZone, yes.
>
> Q. Could it have been Sharon Cummins or Carla Lanthrip?
>
> A. Probably.
>
> Q. Do you have any evidence that it was anybody other than either one of those

|   |   |
|---|---|
|   | women? |
| A. | It could have been Bruce Sherrer for all I know, my boss. |
| Q. | Do you have any evidence that it was Bruce Sherrer? |
| A. | No. |
| Q. | If Bruce Sherrer said, "I kept everything confidential, and I didn't say anything to anybody that wasn't interviewed as a witness," do you have any evidence to dispute that? |
| A. | None that I can prove. |

(Vick, pp. 91-92).

The plaintiff's speculation is not adequate to overcome a motion for summary judgment. *See Pendergrass*, 494 So. 2d at 604 ("Publication is not 'established by rumor or report.'"). Even if it were, any purported publication by employees Cummings and Lanthrip is insufficient to establish that AutoZone published the allegedly defamatory information. "Basic principles of agency law operate within the area of defamation law, of course, and [the Alabama Supreme] Court has held that if 'publication is sought to be shown by an agent, it does not bind the principal as a publication. . . , unless the act of such agent was within the line and scope of the agent so acting or employed." *Pendergrass*, 494 So. 2d at 604, *quoting Weir v. Brotherhood of Railroad Trainmen*, 221 Ala. 494, 498, 129 So. 267, 270 (1930). Even if the evidence established that Cummings or Lanthrip published the information, that is insufficient to impose liability upon the defendant in this case. The court is required by the facts to grant the defendant's motion on this claim. Any of their statements giving rise to this claim were not within the line and scope of their employment with AutoZoners, so as to serve as a basis for any defamatory action.

### 3. Privilege

Lastly, the defendant asserts that the plaintiff's defamation claim is without merit because the company's actions fall within the qualified privilege defense. It is well-settled "that communications between the managerial personnel of a corporation, if made in the line and scope of their duties as employees of that corporation, do not constitute a publication by either the corporation or the employees of the corporation, under the rule of *McDaniel v. Crescent Motors, Inc.*, 249 Ala. 330, 31 So. 2d 343 (1947), and *Burney v. Southern Ry.*, 276 Ala. 637, 165 So. 2d 726 (1964)." *Hoover v. Tuttle,* 611 So. 2d 290, 293 (Ala. 1992). The Alabama Supreme Court has also stated:

> . . . "A communication may be conditionally privileged if it is one in which the party has an interest, and is made to another having a corresponding interest. More specifically, this Court has held that communications among employees in the course of transacting the company's business and in the proper scope of the employee's duties do not constitute a publication.' [] 628 So. 2d at 553 (quoting Atkins Ford Sales, Inc. v. Royster, 560 So. 2d 197, 200-01 (Ala. 1990))." *Cantrell* further stated:
>
>> "This rule of 'no publication' among employees indicates that there is no publication, and thus no actionable defamation, '[a]s long as a communication to a nonmanagerial employee falls within the proper scope of that employee's knowledge or duties.'" 628 So. 2d at 553 (quoting *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1093 (Ala. 1988)).

*Schrimsher v. Liberty Nat. Life Ins. Co.,* 655 So. 2d 986, 988 (Ala. 1995).

The only evidence of publication of any information outside appropriate corporate channels, other than her statement to the plaintiff, which would not be considered a publication, would be Cummings's statement to McGough that there had been previous allegations of harassment against the plaintiff. The disclosure of this information was not under the present

16

facts within the proper scope of her duties with AutoZone. However, at the time this statement was made, Cummings was no longer in AutoZone management–she had been demoted to a sales person premised on her previous violation of corporate policy. Accordingly, the court finds that Cummings's action cannot be attributed to the defendant.

Assuming, for the sake of argument, that her action is attributable to the defendant, the defendant's motion for summary judgment is still due to be granted on this claim for the reasons stated above.

## IV. CONCLUSION

Premised on the foregoing, the defendant's motion for summary judgment is due to be granted as to all of the claims advanced by the plaintiff. An order consistent with the court's findings herein will be entered.

DONE, this the ___ day of April, 2001.

JOHN E. OTT
United States Magistrate Judge